**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRU-GRIND, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-cv-478 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| SWISS-TECH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Swiss-Tech, LLC's motion for summary judgment [28]. For the following reasons, the Court denies Defendant's motion [28].

**I.    Background**

Defendant Swiss-Tech manufactures, among other things, custom-machined precision parts. Swiss-Tech manufactures these parts from 12-foot long stainless steel bars, which it obtains from multiple suppliers. The final stage of the manufacturing process involves grinding the parts to a certain specification. In 2009 and 2010, Swiss-Tech outsourced this work to specialty companies, such as Plaintiff Tru-Grind, Inc. ("Tru-Grind"). Beginning in July 2009, Tru-Grind began grinding a family of six parts for Swiss-Tech. The parts had the following reference numbers: 706422, 706423, 706424, 706425, 706426, and 706427.

For over 15 months, Tru-Grind provided parts to Swiss-Tech and issued invoices for its grinding services. According to Tru-Grind, and not challenged by Swiss-Tech, Tru-Grind invoiced Swiss-Tech at the price of $3.25 per part, with a setup charge of $150.00 per order when applicable. Swiss-Tech subsequently paid Tru-Grind for all invoices from July 2009 through October 2010, at $3.25 per part for prototype lots. According to Swiss-Tech, when it

discovered in October 2010 what it believed to be "mistaken" payments, it notified Tru-Grind and demanded a refund in the amount of $59,863.10 for alleged overpayments made between August 2010 and October 2010. Swiss-Tech maintained that a per-part price of $0.95 applied to all "production" orders, regardless of the size of the individual "production" order or lot.

Swiss-Tech's demand was based on a letter dated January 14, 2009. According to Swiss-Tech, on January 14, 2009, it received a quote from Tru-Grind for grinding a family of parts in which Tru-Grind quoted a price of $0.95 per part for production lots. Swiss-Tech maintains that it accepted the quote and agreed to pay $0.95 per part for production lots and $3.25 per part for prototype lots. Tru-Grind maintains that the only price it ever quoted to Swiss-Tech for the parts at issue was done orally and was for $3.25 per part. In support of its assertion, Tru-Grind points out that the January 14, 2009 quote refers to Part No. 705410, a part which is not referenced in the complaint and, according to Tru-Grind, is not at issue in this litigation.[1] Tru-Grind also points out that the quote expressly states that the per-part price of $0.95 applies only to orders equal to or greater than 5,000 parts and that there were only two orders of parts that equaled or exceeded 5,000 parts. Tru-Grind denies that the parties ever made a distinction between the pricing for prototype lots and production lots in connection with the family of parts at issue in this litigation. Swiss-Tech maintains the Part No. 705410 refers to a "perfect family of parts" and that the parts at issue in the complaint are part of this "perfect family of parts." Swiss-Tech also maintains that the quote was for "5000 pcs Min. Lot" not "5000 pcs Min. Order" and that a "lot" typically consists of multiple orders.

---

[1] As set forth above, the parts at issue in the complaint are Part Nos. 706422, 706423, 706424, 706425, 706426, and 706427.
.

In late 2010, Tru-Grind filed a two-count complaint in the Circuit Court of Cook County, alleging breach of contract and an account stated. On January 21, 2011, Swiss-Tech removed the action to this Court, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Swiss-Tech also filed a counterclaim. In the complaint, Tru-Grind requests damages in the amount of $86,144.72, and in its counterclaim, Swiss-Tech requests damages in the amount of $59,863.10.

## II.     Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

A federal court sitting in diversity applies state law to resolve all substantive questions. *Havoco of America, Inc. v. Hilco, Inc.,* 799 F.2d 349, 352-53 (7th Cir. 1986). The parties do not dispute that Illinois law governs here.[2] To establish a breach of contract under Illinois law, a plaintiff must plead and prove that a valid and enforceable contract existed, that the plaintiff performed its contractual duties but the defendant breached its, and that the plaintiff was injured as a result. See *BI3, Inc. v. Hamor*, 2011 WL 1231156, at *6 (N.D. Ill March 30, 2011). For an oral contract to exist, the parties must have had a meeting of the minds with respect to the terms of the agreement and must have intended to be bound to the oral agreement. See *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1407 (7th Cir. 1991) (applying Illinois law); *Lal v. Naffah* 500 N.E.2d 699, 701 (Ill. 1986). In order for an oral contract to be binding and enforceable, the contract terms must be definite and certain. *Rybak v. Provenzale,* 537 N.E.2d 1321, 1325 (Ill. 1989). The existence of an oral contract, its terms, and the intent of the parties are questions of fact. See *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 848 (7th Cir.1998) (citing Illinois cases). Those questions may become questions of law, however, "if the facts are undisputed and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *David Copperfield's Disappearing, Inc. v. Haddon Advertising Agency, Inc.*, 897 F.2d 288, 290 (7th Cir. 1990).

Defendant Swiss-Tech seeks summary judgment across the board, arguing that there was no "meeting of the minds" between the parties as to the price of the parts at issue in Tru-Grind's

---

[2] Both parties cite Illinois law throughout their respective memoranda.

complaint. Interestingly, Swiss-Tech also contends that a specific document exists—the January 14, 2009 letter—which controls the price of these parts. For instance, in its counterclaim, Swiss-Tech asserts that the per-part price for the parts at issue was $0.95 for "production" parts. Relying on this alleged price, Swiss-Tech calculated a specific damage amount. Accordingly, Swiss-Tech's own counterclaim implies a "meeting of the minds" between the parties that a per-part price of $0.95 for "production" lots existed between the parties, while a separate price of $3.25 applied to the "prototype" lots. Swiss-Tech's counterclaim is dependant on this letter, yet on its face the January 14 letter is not applicable to the relevant parts. Furthermore, Swiss-Tech has not provided any additional evidence or testimony that would connect this document to the relevant parts. Instead, the parties have presented competing declarations attesting to their version of the facts. Because the Court cannot make credibility determinations at this stage, material questions of fact remain as to whether Swiss-Tech agreed to the $3.25 per-part price, either explicitly or through its course of conduct, and also whether the parties agreed to a minimum order term.

Defendant's course of performance also fails to support its claim that there was no agreement as to the price between the parties. It is undisputed that for well over a year the parties performed under the contract alleged by Tru-Grind in the complaint. Viewing the evidence in the light most favorable to Plaintiff Tru-Grind, as the Court must do on Swiss-Tech's summary judgment motion, Swiss-Tech's course of performance is more than adequate evidence to establish that there is at least a dispute as to whether the parties had a meeting of the minds. See *Mulliken v. Lewis*, 615 N.E.2d 25, 28-29 (Ill. App. Ct. 4th Dist. 1993) (holding that, in the event of an ambiguous oral contract, all necessary terms are questions of fact that must be decided from the parties "course of dealing, and other relevant extrinsic evidence.");

5

*Emmenegger Constr. Co. v. King*, 431 N.E.2d 738, 742 (Ill. App. Ct. 5th Dist. 1982) ("Whether an oral contract exists, its terms and conditions and the intent of the parties are questions of fact to be determined by the trier of fact.").

Finally, even if the Court were to assume that the parties agreed to a distinction between "production" parts and "prototype" parts and decided on different pricing models for each, several factual issues remain that would preclude summary judgment in favor of either party. For example, neither party's statement of facts sets forth the criteria for distinguishing between "prototype" parts and "production" parts. Additionally, if the January 14, 2009 letter does apply to the parts at issue, then what price per part applies to orders for less than 5,000 parts? These are just two examples of the material facts that remain either disputed or underdeveloped. Summary judgment is not appropriate on the breach of contract claim.

Likewise, summary judgment is not warranted in favor of Swiss-Tech on Tru-Grind's claim for an account stated. "An account stated has been defined as an agreement between parties who have had previous transactions that the account representing those transactions is true and that the balance stated is correct, together with a promise, express or implied, for the payment of such balance." *W.E. Erickson Const., Inc. v. Congress-Kenilworth Corp.*, 477 N.E.2d 513, 519-20 (Ill. App. Ct. 1st Dist. 1985). "The meeting of the minds may be inferred from the conduct of the parties and the circumstances of the case." *Id.* For instance, "[w]here a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection, this constitutes a recognition by the latter of the correctness of the account and establishes an account stated." *Id.* Here, there is a dispute as to whether Swiss-Tech objected to the invoices within a reasonable amount of time. Nearly 15 months and 50 orders passed before Swiss-Tech first objected to the pricing scheme utilized by the parties.

Contrary to Swiss-Tech's assertion that it objected in a timely fashion, the evidence at this stage suggests that it may not have, and, in any event, certainly does not warrant summary judgment in favor of Swiss-Tech.

Plaintiff Tru-Grind has presented sufficient evidence to warrant a trial on its claims for breach of contract and an account stated. In turn, there simply is not sufficient evidence in the record to conclude as a matter of law that there was no binding agreement between the parties, or that there was a meeting of the minds on Swiss-Tech's version of the agreement. See also *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 369-70 (7th Cir. 1998). Accordingly, Swiss-Tech's motion for summary judgment [28] must be denied.

## IV. Conclusion

For the reasons stated above, the Court denies Defendant and Counterclaimant Swiss-Tech's motion for summary judgment [28].

Dated: September 17, 2012  _____
Robert M. Dow, Jr.
United States District Judge